Irma SKOLLER and Jay Skoller,
Plaintiffs,

v.

BLUE CROSS–BLUE SHIELD OF GREATER NEW YORK, Blue Cross Association, Blue Shield Association and the United States, Defendants.

No. 81 Civ. 4936(MEL).

United States District Court,
S.D. New York.

April 11, 1984.

Tedd Blecher, New York City, for plaintiffs.

Breed, Abbott & Morgan, New York City, for defendants Blue Cross-Blue Shield of Greater New York, Blue Cross Ass'n and Blue Shield Ass'n.

LASKER, District Judge.

Plaintiff Irma Skoller is a federal employee who claims she was wrongfully denied benefits under her insurance contract with defendants Blue Cross Association, Blue Shield Association and Blue Cross-Blue Shield of Greater New York (collectively referred to here as "BCBS"). The contract under which Mrs. Skoller and her son Jay, the other named plaintiff, were insured was negotiated pursuant to the Federal Employees Health Benefits Act ("FEHBA"). 5 U.S.C. § 8901 *et seq.*, by the United States Office of Personnel Management ("OPM"), also a named defendant. The contract provided for 100% payment by the insurer for medically necessary hospitalization due to mental illness at a member hospital. Medically necessary treatment for mental illness at non-member hospitals is paid at only 80% of covered services under the 1980 contract and at 70% of covered services under the 1981 contract.

Defendants move for summary judgment on or dismissal of all causes of action. Plaintiffs cross-move for summary judgment on their second and fifth causes of action.

## I.

The following material facts are undisputed for the purpose of this motion. In December 1980 Jay required hospitalization for mental illness. Mrs. Skoller sought admission for Jay at New York Hospital, Westchester Division. The hospital determined that Jay should be assigned to an intermediate care unit at Westchester Division which BCBS classifies as a non-member unit, and for which Jay's medically necessary treatment would be covered at the 80% level in 1980 and at the 70% level in 1981.

Rather than the hospital collecting directly from BCBS, it required Mrs. Skoller to pay for treatment directly and in advance. To avoid being directly responsible for these charges, Mrs. Skoller obtained admission for Jay to be treated at High Point Hospital, a non-member hospital of BCBS. Mrs. Skoller received 80% coverage for

Jay's hospitalization from December 13, 1980 until January 1, 1981 and 70% coverage from January 1, 1981 until July 1, 1981, the date on which BCBS determined that further in-patient treatment was no longer medically necessary.

Plaintiffs claim, *inter alia*, that they should have received full 100% basic benefits for Jay's hospitalization. Defendants, on this motion, contend that plaintiffs must first seek OPM review of their claims of coverage, and alternatively, that all of plaintiffs' claims be either dismissed or summarily adjudged against plaintiffs on the merits.

## II.

### A. *Primary jurisdiction and exhaustion of administrative remedies.*

BCBS argues that under the doctrines of primary jurisdiction and exhaustion of administrative remedies, plaintiffs must seek OPM review of their claims before resorting to this court. Plaintiffs respond that these doctrines are not jurisdictional, but within the discretion of the trial court,[1] and that the application of neither is necessary or appropriate in this case.

■ The doctrine of primary jurisdiction is applicable if the law clearly requires it;[2] if the issue involved is so complex that application of the agency's particular expertise will aid in the court's decision, *see, e.g., Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); if resort to the agency will materially expedite resolution of the dispute; or if uniformity in the application of a legislative scheme is required, *see, e.g., Texas & Pacific R. Co. v. Abilene Cotton*

*Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); and *United States v. Philadelphia National Bank*, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). *But cf. Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

■ A fair reading of the enabling legislation and administrative regulations pursuant to the FEHBA leads to the conclusion that the law does not clearly require primary jurisdiction in OPM. The text of 5 U.S.C. § 8902(j) and the Senate Report submitted prior to its enactment show that Congress merely wanted OPM decisions on contract interpretation, when made, to be binding on the insurance carriers with whom OPM contracts.

Section 8902(j) provides that all contracts must require the carrier to agree to pay claims if OPM decides that the claim comes within the terms of the contract. The legislative history of subdivision (j) shows that Congress' purpose was to assure that OPM contract interpretations in individual cases be binding on the carrier *"where [OPM] makes a determination that the covered employee ... is entitled to the benefit under the terms of the contract."* S.Rep. No. 93–511, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2755, 2757 (emphasis added). The statute requires that carriers "agree to pay" claims in individual cases *"if [OPM] finds* that the employee is entitled thereto under the terms of the contract." 5 U.S.C. § 8902(j) (emphasis added). Nowhere did Congress require that OPM make such a determination; it only required that such determinations be binding if OPM did in fact make them.

---

**1.** 4 Davis, Ad.Law Treatise (2d Ed.) ("Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented.")

**2.** *See, e.g.,* the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(b) (suit for an unlawful practice in a state having a law prohibiting it may not be brought until 60 days after

proceedings have been commenced under the state law, unless such proceedings have been earlier terminated, with specified exceptions); and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (providing for nonjudicial and nonadversary resolution of claims before the Equal Employment Opportunity Commission, and providing that a complainant in a state or locality with a fair employment commission must first go to that commission with his or her claim).

While OPM's own regulations, 5 CFR § 890.105, provide that an employee "may make a written request to OPM ... for a review to determine whether the plan's denial is in accord with the terms of OPM's contract with the carrier of the plan", the regulatory language is clearly permissive. Moreover, 5 CFR § 890.107 expressly provides for actions at law against the carrier of the health plan to recover on claims for health benefits. In sum, neither Congress nor OPM has manifested any intent to make OPM review either an exclusive remedy or a mandatory prerequisite to judicial resolution of disputes over contract interpretation.

Nor is the issue involved in this case such that application of OPM's expertise or exercise of discretion is necessary. The case involves questions of contract analysis, interpretation, construction and application—matters which are peculiarly and traditionally within the competence and expertise of courts of law and as to which OPM holds no particular expertise. The case also involves allegations that the defendants violated the antitrust laws. OPM has no authority to resolve such questions.

Resort to OPM will not materially expedite resolution of this dispute. Indeed, requiring plaintiffs to seek OPM review before pressing their suit in this court would merely add another tier of litigation because, as has already been stated, OPM is without power to resolve the plaintiffs' antitrust claims, and, even as to the contract claims, OPM has no final authority.

Finally, there is no need to require OPM review to insure uniformity of the legislative scheme of the FEHBA. As plaintiffs persuasively argue, there is no pervasive regulatory scheme requiring uniformity of contract interpretation such that resolution of claims requiring contract interpretation must be centralized in OPM. *Compare Abilene, supra,* and *Philadelphia National Bank, supra.*

It is true, as defendants claim, that the FEHBA authorizes OPM to negotiate one, and only one government-wide service benefit plan. *See* 5 U.S.C. § 8903(1). It does not follow, however, as the defendants argue, that the single plan limit requires that the single plan must be applied with absolute uniformity throughout the country. Be that as it may, to the extent that uniformity in the interpretation of FEHBA insurance contracts is desirable, OPM review is still not mandated as a matter of primary jurisdiction. Uniform contract interpretation can as easily be developed on a circuit-wide basis as is normally true with regard to all congressional acts.

Similar principles apply with regard to the doctrine of exhaustion of administrative remedies. "Where there is no statutory requirement of exhaustion the court should balance the agency's interests in applying its expertise, making a proper record, and maintaining an efficient, independent administrative system with the interests of private parties in finding adequate redress." *Shelter Framing v. PBGC,* 705 F.2d 1502, 1508 (9th Cir.1983). *See also Fairchild, Arabatzis & Smith, Inc. v. Sackheim,* 451 F.Supp. 1181, 1184–85 (S.D.N.Y.1978) and cases cited therein.

As indicated above, neither the enabling legislation nor the administrative regulations pursuant to the FEHBA clearly require OPM review prior to judicial resolution; application of OPM's expertise is not necessary because OPM holds no particular expertise in contract interpretation; and OPM review is not necessary for the maintenance of uniform contract interpretation. In addition, OPM cannot adequately resolve the parties' dispute because it has no authority to resolve plaintiffs' antitrust claims. *See Aircraft & Diesel Corp. v. Hirsch,* 331 U.S. 752, 773, 67 S.Ct. 1493, 1503–04, 91 L.Ed. 1796 (1947). Exhaustion of plaintiffs' administrative remedy of OPM review is therefore not required.[3]

---

**3.** *See also Lemons v. Blue Cross Assn.,* No. 79–C–98, slip op. at 33, 36 (N.D.Ill., Feb. 4, 1983) (OPM exhaustion not required under either the FEHBA or 5 CFR § 890.105); and *Collins v.*

*Group Hospital Service,* No. 81–C–150–E, slip op. (N.D.Okl., October 28, 1981) (same). Since the exhaustion doctrine is inapplicable, plaintiffs' argument that this case falls within

For the foregoing reasons, defendants' motion to dismiss plaintiffs' second, third, fourth and fifth counts for lack of jurisdiction is denied.

## B. Substantive claims.

### 1. Reduction in "vested rights"

■ Defendants' motion for summary judgment on plaintiffs' third cause of action for damages due to defendants' alleged unilateral reduction of benefits from 80% to 70% for hospital and medical expenses in connection with mental illness is granted.

The parties do not dispute the only material facts: that BCBS reduced supplemental benefits from 80% to 70% in their 1981 service benefit contract, and that defendants paid plaintiffs their full supplemental benefits under the contracts for claims filed in 1980 and 1981.

Plaintiffs argue that they have a vested right to 80% coverage, and that since they did not expressly consent to the reduction in benefits, they are entitled to continue to receive 80% coverage. Defendants respond first, that the contract and brochure clearly provided that the contract might be modified or terminated, and second, that there is no constitutional or statutory basis upon which such a vested right can be based.

Defendants' position is sound. As a matter of law, in the absence of any claim, much less any showing, that she was fraudulently induced to enter the contract, or that she did not freely do so, Mrs. Skoller is bound by its terms. Defendants' motion for summary judgment on plaintiffs' third cause of action is granted.

### 2. Violation of OPM regulations.

■ Defendants move and plaintiffs cross-move for summary judgment on plaintiffs' fourth cause of action which alleges violation of OPM's regulations governing claims reviews. The parties agree

certain of the exceptions to the exhaustion doctrine is not considered. See Shelter Framing, 705 F.2d at 1509 n. 8 and Republic Industries v.

on the facts, but disagree as to the proper interpretation of the regulations.

5 CFR § 890.105(b) and (c) provide:

"(b) If a claim (or portion of a claim) or a service is initially denied by a health benefits plan, the plan will reconsider its denial upon receipt within one year of the denial of written request for reconsideration from the employee or annuitant.... The plan must affirm the denial in writing to the employee or annuitant, setting out in detail the reasons therefor, within 30 days after receipt of the request for reconsideration, or pay or provide the claim or service within such time, unless it requests additional information reasonably necessary to a determination.... (c) If a plan either affirms its denial of a claim, or fails to respond to a written request for reconsideration within 30 days of the request, the employee or annuitant may make a written request to OPM's Associate Director for Compensation for a review to determine whether the plan's denial is in accord with the terms of OPM's contract with the carrier of the plan...."

Plaintiffs claim that this provision mandates plan response within 30 days; that the plan either must make a determination respecting whether or not to pay the claim or must request additional information; and, that since defendants did not respond, they are per se liable on the claim.

Defendants interpret § 890.105 to mean that, while the plan must respond to employees' requests for review of claims within 30 days, if the plan fails to respond, the employee may turn to OPM, by whose determination, by law and by contract, the plan must abide.

Plaintiffs' interpretation of § 890.105 is unreasonable. We read the regulation to mean that subdivision (c) qualifies subdivision (b) by providing that "[i]f a plan ... fails to respond to a written request for reconsideration within 30 days of the request, the employee ... may make a writ-

Central Pa. Teamsters, 693 F.2d 290, 298 (3d Cir.1982).

ten request to OPM ... for review." If an employee does turn to OPM, the plan must abide by OPM's decision. *See* 5 CFR § 890.105; 5 U.S.C. § 8902(j); and S.Rep. No. 93–511, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2755, 2757. If an employee does not seek OPM review, he or she may seek judicial redress. *See* 5 CFR § 890.107. In view of this interpretation of the regulation, defendants' motion for summary judgment is granted and plaintiffs' cross-motion for summary judgment is denied.

### 3. Interference with contract

■ Finally, defendants' motion to dismiss plaintiffs' sixth cause of action which alleges tortious interference with a contract between plaintiffs and High Point Hospital is granted. The claim is deficient because it does not allege the existence of a clearly valid contract, the procuring of actual breach of the contract, or actual damages. *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, (1956); *cf. Horwitt v. Movado Watch Agency, Inc.,* 62 F.R.D. 5, 6 (S.D.N.Y.1974). In particular, plaintiffs nowhere state that High Point terminated its dealings with them. In fact, Jay remained in High Point Hospital until his discharge on April .7, 1982 when Dr. Mohammad determined that Jay no longer required hospitalization. Affirmation of Wali Mohammad, M.D. in Opposition to Defendants' Motion for Summary Judgment.[4]

It is so ordered.

---

**4.** Defendants' motion to dismiss plaintiffs' antitrust claims is granted. Plaintiffs, in their Reply Memorandum and at oral argument on the motion, indicated that they have abandoned the claim made against OPM and the theory of conspiracy alleged in the complaint and wish to assert a new claim which they describe in their motion papers as a boycott by BCBS of hospitals that are primarily institutions for the treatment of mental illness. Any motion to amend the complaint as to this claim shall be filed within 30 days of the date of this memorandum.

Plaintiffs' second cause of action alleges:

"25. That the actions complained of herein breach the contract of insurance by and between the plaintiff and corporate defendants."

Plaintiffs' fifth cause of action alleges:

"31. That the actions complained of herein illegally and unlawfully discriminated against the plaintiffs."

We are unable to determine whether these causes of action are valid because they do not specify the facts on which they rely, but merely refer to facts alleged generally in the complaint. Plaintiffs have failed to meet even the broad requirements of Fed.R.Civ.P. 8(a) to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' motion and plaintiffs' cross-motion for summary judgment on plaintiffs', second cause of action and defendants' motion for summary judgment on plaintiffs' fifth cause of action are denied, but these claims are dismissed with leave to plaintiffs to replead within 30 days of the date of this memorandum.