**Laura J. EIDLER, Plaintiff,**

v.

**BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN, Defendant.**

No. 86–C–1073.

United States District Court,
E.D. Wisconsin.

Oct. 21, 1987.

Boyd M. McGranahan, Milwaukee, Wis., for plaintiff.

Mary Traver, Gen. Counsel, Blue Cross & Blue Shield, Milwaukee, Wis., for defendant.

**DECISION AND ORDER**

WARREN, Chief Judge.

Plaintiff Laura J. Eidler brought suit against defendant Blue Cross and Blue Shield of Wisconsin over defendant's denial of certain medical claims made by plaintiff. Plaintiff alleges breach of contract, misrepresentation, bad faith, tortious interference with contract, emotional distress, and violation of due process. Currently pending before the Court is defendant's motion for summary judgment, which argues (1) plaintiff's claim is not timely filed; (2) plaintiff did not exhaust administrative remedies; (3) plaintiff's state law tort claim for bad faith is preempted by federal law; and (4) defendant's denial of plaintiff's claim was not arbitrary and capricious. For the reasons set forth in the decision below, the motion for summary judgment is denied.

**I. Background**

The plaintiff, a federal employee, is a subscriber to the Federal Employees Health Benefits Program. The program was established by Congress in the Federal Employees Health Benefits Act ("FEH-BA") to provide health benefits for federal

employees. The program is administered by the United States Office of Personnel Management ("OPM").

One of the plans under the FEHBA is the Blue Cross and Blue Shield Service Benefit Plan. Wisconsin federal employees enrolled in the Service Benefit Plan have their claims administered by Blue Cross and Blue Shield of Wisconsin, a Wisconsin service insurance corporation that is the defendant in this action. Plaintiff was enrolled in the Blue Cross and Blue Shield plan.

On July 19, 1982, plaintiff suffered serious injuries in a motorcycle-car accident. Plaintiff was treated by Dr. Mysore Shivaram. Dr. Shivaram performed surgery on plaintiff in 1982, 1983, and 1984 and treated her until 1985. Plaintiff submitted claims for the services of Dr. Shivaram to the defendant, but the defendant denied portions of the claims on the basis that the doctor's charges were in excess of the usual and customary charges for those services. The balances remaining are the subject of this dispute.

Both plaintiff and her doctor wrote letters to defendant in June of 1986 seeking reconsideration of the claims. Defendant, however, stood by its decision.

Plaintiff filed this suit September 10, 1986, in state court. The suit was subsequently removed to this Court.

## II. Summary Judgment Standard

Rule 56, Federal Rules of Civil Procedure, provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company*, 778 F.2d 1278, 1281 (7th Cir.1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987).

## III. Timeliness

The agreement between Blue Cross and Blue Shield and the OPM that embodied the Service Benefit Plan is referred to as Contract No. CS 1039. It is renewed annually. The 1982, 1983, 1984, and 1985 versions were substantially the same in portions relevant to this suit. Article II(d) of the 1982 contract reads as follows:

> Actions to Recover. No action at law or in equity shall be brought to recover on this contract prior to the expiration of 60 days after a claim has been filed in accordance with the requirements of this contract, nor shall such actions be brought at all unless brought within two years from the expiration of the time within which a claim must be filed as required by this contract.

Incorporated by reference into the Contract No. CS 1039 was the Blue Cross and Blue Shield Service Benefit Plan Brochure. At page 26 of the 1982 Service Benefit Plan Brochure, it states: "All claims must be submitted under the appropriate portion of Plan (Basic or Supplemental) no later than December 31 of the calendar year after the one in which the covered care or service was provided."

Defendant argues that claims for covered services for 1982 were required to be submitted for payment no later than December 31, 1983. Thus a lawsuit on those claims was required to be brought by December 31, 1985. Since this lawsuit was filed on September 10, 1986, the 1982 claim portion should be barred. Plaintiff counters that this case does not provide a single instance of claim denial, but a continuing denial of multiple claims. As long as any portion of the claims fall within the period of limitations, the entire claim should be allowed.

In *LaBelle v. Blue Cross & Blue Shield United*, 548 F.Supp. 251 (W.D.Wis.1982), Judge Shabaz interpreted the exact same provisions to impose a two-year time limit that preempted the six-year Wisconsin Statute of Limitations.

Plaintiff attempts to distinguish this case from *LaBelle*. In *LaBelle*, the claim was

for hospital expenses incurred in a single year, not for continuing treatment over a number of years.

The Court is not persuaded by this argument. Despite the continuing nature of the treatment, the claims necessarily relate to specific yearly contracts. Each yearly contract imposes a time limit for filing suit over a denial of claim relating to that individual contract. The 1985 contract does not purport to extend the time limit for claims under the 1982 contract simply because treatment is of a continuing nature. Furthermore, plaintiff's reliance on Wisconsin law is misplaced. Congress clearly intended to preempt state law in the FEHBA, 5 U.S.C. § 8902(m)(1):

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

Still, the Court has grave doubts regarding the practical application of such law. In essence, Congress has allowed an insurance company to establish by contract a new federal Statute of Limitations. Whether this was an unconstitutional delegation of authority was not discussed by the parties.

Therefore, while it would seem appropriate to dismiss as untimely the claim for covered services for 1982, the Court declines to do so at this time and invites further discussion on the issue.

### IV. Exhaustion of Remedies

■ Further provisions of the contract provide for review of a claim denial. If a claim is denied, the Blue Cross and Blue Shield Plan that denied the claim will reconsider its denial upon a written request within one year of the denial. 1985 Brochure, at page 2. The 1984 Brochure contained essentially the same language, but added:

> If the Plan affirms its denial or fails to respond to a written request, you may ask the Office of Personnel Management to determine if the denial complies with the provisions of the brochure ... This written request must be made within 90 days after the Plan has affirmed its denial. Include with your request a copy of your letter to the Plan and copies of any correspondence from the Plan regarding its denial. The Office of Personnel Management will notify you and the Plan of its decision within 30 days after it receives all the evidence it needs to complete the review.

1984 Brochure at page 2. The 1983 Brochure stated that if the Blue Cross and Blue Shield Plan affirmed a claim denial, "the Plan will advise you of further review procedures." 1983 Brochure at page 2. Under the FEHBA, the Blue Cross and Blue Shield Association must agree to pay for those claims that the OPM finds were inappropriately denied. 5 U.S.C. § 8902(j). The legislative history of the FEHBA states that Congress intended that the OPM's administrative review process would provide an "adequate administrative remedy" for federal employees and would spare them from being "forced into courts" to recover benefits due them. H.R.Rep. No. 459, 93rd Cong., 1st sess. 2, 7 (1983). The OPM has established by regulation the administrative mechanism for an individual subscriber to challenge a claim denial. 5 C.F.R. § 890.105.

Defendant points to these legislative and contractual provisions as support for the proposition that plaintiff must exhaust her administrative remedies before seeking judicial review of a claim denial. Since she did not present her claims to the OPM for review, the claims should be barred. Plaintiff argues that the word "may" means OPM review is not mandatory.

Case law on this point is split. Defendant's position is supported by *Bateman v. Blue Cross–Blue Shield of Alabama*, 579 F.Supp. 265 (M.D.Ala.1984) (holding the word "may" means simply that claimant may seek review or may accept carrier's decision). Plaintiff's position is supported by *Skoller v. Blue Cross–Blue Shield of Greater New York*, 584 F.Supp. 288 (S.D.

N.Y.1984) (applicable laws do not require primary jurisdiction in OPM).

The Court finds that plaintiff was not required to exhaust the available administrative remedy. First, the provision that binds Blue Cross and Blue Shield to the OPM decision is an explicit congressional enactment. Yet the language that supposedly binds plaintiff to the same administrative process comes from a brochure incorporated into Contract No. CS 1039. That brochure language varied in each of the three years applicable to this suit. In 1983, it said the Plan will advise the claimant of further review procedures; in 1984, it said the claimant "may" ask the OPM if a mistake was made; and in 1985, the reference to OPM was removed entirely.

Second, the 1984 language, the strongest of the three, says "may", not must or should. It would seem strange that Congress would intend foreclosure of judicial review with such permissive language printed in a brochure incorporated into a contract.

Third, a review of the legislative intent of the FEHBA shows that the establishment of administrative review was for the benefit of the claimant, not for insurance companies to preclude a claimant's judicial recourse.

Finally, since appeal to the OPM must be within 90 days of the final denial by Blue Cross and Blue Sheild, a claimant would be forced to act within that time or forego all future judicial review. Such is the case with the plaintiff's claims in the case at hand. A requirement that she exhaust administrative remedies would effectively bar any claim since the 90 day period for each claim has expired.

In sum, the Court finds that neither the language of the FEHBA nor the provisions of Contract No. CS 1039 and the incorporated brochures serve to prohibit judicial review of a claimant who has not pursued a claim through the OPM. The defendant's motion on this point is denied.

## V. Bad Faith Tort Claim

■ Defendant claims that a state law tort claim for bad faith is preempted by 5 U.S.C. § 8902(m)(1), which amended the FEHBA in 1978. That section reads:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

Defendant argues,

> When Ms. Eidler alleges a right to recover damages for insurer bad faith, she alleges a tort reconized by the State of Wisconsin, but not by all other states. If this and other state causes of action are not preempted, the resultant costs to the carriers of judgments rendered on these bases will be reflected in the premium rates of the carriers and, accordingly, spread to the government and, hence, the enrollees in other states. This was the very problem Congress was attempting to remedy in enacting § 8902(m)(1).

Defendant's brief in support of summary judgment motion at 22. Defendant quotes the following House of Representatives report on the preemptive effect of § 8902(m)(1).

> H.R. 2931 amends section 8902 of Title 5, United States Code, relating to contracts for Federal employee health benefits plans, by adding a new subsection (m) to the end thereof. The new subsection provides that the provisions of any health benefits contract under Chapter 89 of Title 5 which relate to the nature or extent of coverage or benefits, including payments with respect to benefits, shall supersede and preempt any State or local law, or any regulation issued under such law, relating to health insurance or plans, to the extent that such law or regulation is inconsistent with the provisions of the Federal employees' health benefits contract. The effect of this amendment is to preempt the application of State laws or regulations which specify types of medical care, providers of care, extent of benefits, coverage of fam-

ily members, age limits for family members or other matters relating to health benefits or coverage when such laws or regulations conflict with the provisions of contracts under the Federal employees' health benefits program. However, the amendment is not intended to apply to State or local laws relating to the taxation of health insurance carriers or to the maintenance of special reserves.

H.R.Rep. No. 282, 95th Cong., 1st Sess., at 4–5 (1977).

In cases where Congress has not entirely displaced state law over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, "that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443, *reh'g denied,* 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984) (citations omitted). The purpose and objective of Congress in § 8092(m)(1) is to preempt state law that is inconsistent with contractual provisions entered into under the FEHBA. But while it is clear that the contractual provisions entered into will come into play in an evaluation of a Wisconsin bad faith tort claim, *see Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1914, 85 L.Ed.2d 206 (1985) (bad faith tort claim is firmly rooted in the expectations of the parties), it is not clear that the tort is inconsistent with any specific contractual provision. For example, the preemption of the state statute of limitations came from express contractual provisions. *See* section II of this decision, *supra.*

Defendant contends that an imbalance of costs to the government will arise if the claim is allowed since other states do not recognize the bad faith tort. In other words, enrollees in one state will be forced to assume the cost of a bad-faith tort in another even though they have no recourse to the same claim.

Under this line of reasoning, however, all state claims would have to be preempted since the common law of each state is different. Certainly if Congress had sought to preempt any state law that is not consistent with every other state law, it would have said so. Furthermore, the provisions and legislative history of § 8902(m)(1) show the concern of Congress was state laws that conflict with contractual provisions, not other state laws.

Defendant can point to no contractual provisions that conflict with a Wisconsin bad faith tort claim. The bare allegation that the claim will relate to the contract in question does not suffice under the standard set forth in § 8902(m)(1). Therefore, summary judgment on this point is denied.

### VI. Denial of Claims

■ Defendant's final basis for its summary judgment motion goes to the merits of plaintiff's claim that defendant should have paid more of her medical bills. Defendant contends (1) it was only contractually liable for "usual, customary and reasonable" charges (UCR); (2) portions of plaintiff's bills were above the UCR; and (3) this Court's review of defendant's actions should be limited to the arbitrary and capricious standard of the Federal Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

The Court begins with a determination its role in this case. Had this case gone through the OPM, the Court's review would be limited to those standards enumerated in 5 U.S.C. § 706. But since the case did not, the Court does not see how these essentially appellate standards can apply. No independent review of the record has been made by any administrative or judicial body. As such, this Court will serve in its traditional role as a court of first impression.

Defendant's claim in essence is that there was no breach of contract. It cites Article XV of Contract No. CS 1039, which contained the same language in the 1983, 1984, and 1985 contracts. That provision reads in part:

The *Corporation agrees* to provide Basic Surgical–Medical Benefits as described in the Brochure attached to this contract. Except for those areas listed under "Special Areas" in the Brochure, or as other-

**1218**

wise noted in this Article, the Plan serving the area in which covered services are rendered shall determine, with respect to the amount of any benefit payment, "usual," "customary," and "reasonable" charges as those terms are defined in the Brochure. Both parties recognize that flexibility in methods and procedures employed by Participating Plans in determining "usual," "customary," and "reasonable" charges, is required.

Except for those areas listed as "Special Areas" in the Brochure or as otherwise noted in this Article, Plans shall maintain records of "usual" charges based on actual charges made by physicians for services rendered, or on a survey of charges, or on a schedule of "usual" fees submitted by the physician to the Plan. Such records shall be maintained for at least a majority of physicians practicing in the areas serviced by the Plans. Plans shall also maintain records of physicians' "customary" charges. Such records may be maintained by geographic area(s), medical speciality and other factors, if any, as deemed appropriate by the Plans. Plans shall periodically review their records of "usual," and "customary" charges in accordance with local Plan practice.

In the absence of current "usual" charge records for the physician or for the service provided, payment for physicians' charges, not in excess of the "customary" charge, is allowable. In the absence of a "customary" charge for the service provided, payment will be considered to be "reasonable" if it is determined by considering the payment for a similar service, or by individual consideration at the Plan's discretion.

In the event a Participating Plan, for reasons equally applicable to all other similar underwritten business, is unable to make all benefit payments in accordance with the above paragraphs, such Plan may make benefit payments under this contract in accordance with a schedule of benefit payments of its own choosing, provided that such schedule shall approximate the level of fees customarily charged by a majority of physicians practicing in the Plan's area. Plans shall review their schedule of benefit payments in accordance with local Plan practice. A Plan may at its option, make benefit payments hereunder based on actual charges made by physicians for specific services, provided that such payments approximate the customary charges for that service made by a majority of physicians in the Plan's area.
(Emphasis in original; "Corporation" refers to Blue Cross and Blue Shield Association.)

An affidavit of Kenneth F. Savage, manager of defendant's Health Benefit Review Department, states that the UCR reimbursement provided by defendant is based on statewide prevailing fees for physician services. He further states that in regard to the claims at issue in this case, defendant paid the UCR charges, as determined by its prevailing fee data. An affidavit of Donna Lukas, a "Medical Review Specialist for Policy Implementation" for defendant, states that since Dr. Shivaram "coded" many of his services as "Not Otherwise Classified," his charges were automatically reviewed by registered nurses employed by defendant.

Plaintiff submits an affidavit of Dr. Shivaram in which he claims that taking into account the severity of plaintiff's injuries, his charges were usual, customary and reasonable. He also states that he reviewed the methods used by defendant to calculate UCR doctor fees. He says those methods are "outrageous" and not designed properly. Plaintiff also submits an affidavit of Dr. John P. Mullooly, in which he states that upon review of the medical history of this case, defendant could not have reasonably reviewed Dr. Shivaram's fees.

Defendant points out that under the contract, the plan, not the physician, determines what is UCR, based on a system devised by the plan. "That a physician's charges are deemed 'reasonable' by the physician himself, or other physicians, or even a court of law is utterly immaterial to the question whether the charges were usual, customary and reasonable according

to an objective, formulaic methodology such as incorporated in Contract No. CS 1039." Defendant's Reply Brief at 5.

Defendant's characterization of the Court's role in this case is misleading. In a breach of contract claim, it is within the purview of the Court to determine whether a party's conduct was in accordance with the contract's provisions. Defendant cites a provision of the contract that says defendant is to determine the UCR standard and then jumps to a conclusion that any claims using this standard are unreviewable. Regardless of whether defendant was responsible for establishing a contract's standard, defendant is still obligated to follow that standard. The only evidence before the Court that defendant followed the provisions of the contract, including the provision for which it was to define the UCR standard, is the affidavit of Mr. Savage, which states the claims in question were dictated by statewide data. But defendant's affidavit of Ms. Lukas stated that Dr. Shivaram's claims required special review. As stated above, the party moving for summary judgment has the burden of establishing that there are no genuine issue of material fact. Viewing the entire record in a light most favorable to plaintiff as required by this motion, the Court is not convinced that there is no material facts in dispute as to whether defendant was in breach of contract. Therefore, the motion for summary judgment on this point is denied.

### VII. Summary

1. The Court declines at this time to dismiss plaintiff's claims under the 1982 contract as untimely filed.

2. Plaintiff was not required to exhaust administrative remedies.

3. The Wisconsin state tort claim of bad faith is not barred.

4. Defendant is not entitled to summary judgment on the issue of whether it complied with the contract.

Accordingly, defendant's motion for summary judgment is hereby DENIED.

The parties have stipulated to a 60-day discovery extension, effective the date of this decision. That extension is hereby GRANTED. The Court will hold a pretrial/settlement conference on *Tuesday, January 12, 1988 at 9:30 a.m.* in Courtroom 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.