954 F.2d 705
 60 USLW 2652
 Patricia M. KOBLEUR, Individually and on Behalf of her
Husband and Ward, Joseph M. Kobleur, and on behalf
of all other persons similarly situated,
Plaintiffs-Appellants,
v.
GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., d/b/a Blue
Cross and Blue Shield of the National Capital
Area, Defendant-Appellee.
 No. 91-8458.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 28, 1992.
 
 Brent J. Savage, Adams, Gardner & Ellis, P.C., James E. Starnes, Richard H. Middleton, Jr., Middleton & Anderson, P.C., Savannah, Ga., Robert H. Benfield, Jr., Middleton & Anderson, P.C., Atlanta, Ga., for plaintiffs-appellants.
 Michael R. Hurst, Heymand and Sizemore, William H. Major, Atlanta, Ga., Terry L. Readdick, Dickey, Whelchel, Brown & Readdick, Brunswick, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before COX, Circuit Judge, JOHNSON* and REAVLEY**, Senior Circuit Judges.
 REAVLEY, Senior Circuit Judge:
 
 
 1
 Patricia Kobleur, acting individually and on behalf of her husband and ward, Joseph M. Kobleur, brought suit against Group Hospitalization and Medical Services, Inc., d/b/a Blue Cross and Blue Shield of the National Capital Area (Blue Cross), seeking declaratory and injunctive relief and damages for Blue Cross' denial of the Kobleurs' insurance claims. The district court dismissed the case without prejudice because of the Kobleurs' failure to exhaust their administrative remedies before the United States Office of Personnel Management (OPM), and the Kobleurs appeal. Because we find that an exhaustion requirement exists within the regulatory scheme of the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901-8914 (1988) (FEHBA), and that it is appropriate to require exhaustion in this case, we affirm.
 
 I. BACKGROUND
 
 2
 Mr. Kobleur, a retired employee of the Federal Bureau of Alcohol, Tobacco, and Firearms, suffers from Alzheimer's disease. The Kobleurs obtained health insurance under a plan that the National Alliance of Postal and Federal Employees (the Alliance) offered to federal employees and retirees pursuant to a contract between the Alliance and OPM. The FEHBA grants OPM the authority to contract with private health insurance carriers like the Alliance to provide a variety of plans from which federal employees may elect their health insurance coverage. The Kobleurs chose the plan offered by the Alliance. Blue Cross was the underwriter for the health plan that the Alliance offered in 1989.
 
 
 3
 During that year, Mr. Kobleur received medical, psychiatric, and other services for the treatment of his Alzheimer's disease. The Kobleurs filed claims for benefits to cover the cost of these services, but Blue Cross denied or limited its obligation on several of the claims. Mrs. Kobleur's sister, Ann Horvath, who was handling the Kobleurs' financial affairs at the time, contacted a Blue Cross representative to inquire whether the Kobleurs could appeal Blue Cross' denials. The representative allegedly said no, and the Kobleurs did not seek an appeal.
 
 
 4
 Instead, on August 7, 1990, the Kobleurs began this suit by filing a "Class Action Complaint" against Blue Cross. The Kobleurs alleged that Blue Cross' denial of their claims was based on an unlawful scheme by Blue Cross to limit its liability under the health plan by classifying Alzheimer's and other "progressive dementia diseases" as "physical or biological disorders" when the patient is treated in a mental health facility, but as "mental disorders" when he is treated in a conventional hospital. The Kobleurs asserted that Blue Cross' classification of Alzheimer's as a mental disorder was arbitrary and capricious and thus constituted a breach of both the terms of the health plan and Blue Cross' fiduciary duties.[1] The Kobleurs requested relief in the form of (1) an order certifying a class action with Mrs. Kobleur as the representative of the class;[2] (2) a judgment that progressive dementia diseases are physical or biological disorders under the plans' terms; (3) a declaration that Blue Cross breached the plans' terms and its fiduciary duties; (4) a judgment clarifying the plaintiffs' rights under the plans; (5) an injunction against further breaches; and (6) an award of damages, interest, costs, and attorneys' fees.
 
 
 5
 On January 14, 1991, the Kobleurs filed a Motion for Class Certification in which they requested certification of nine different plaintiff classes.[3] Four days later, they sought to amend their original complaint to include all of the alleged improprieties represented by the nine classes. Blue Cross filed a Motion to Dismiss for failure to exhaust administrative remedies, and the district court granted this motion, dismissing the case without prejudice. The Kobleurs appeal this decision.
 
 II. JURISDICTION
 
 6
 Blue Cross contends that this court does not have jurisdiction to hear this appeal because the district court has not entered a final order in this case. Blue Cross originally moved for dismissal of the case, but the district court converted the motion into a motion for summary judgment so that it could consider materials outside the pleadings. Finding that the Kobleurs had failed to exhaust their administrative remedies, the court then refused to enter summary judgment because "[t]he proper remedy for failure to exhaust administrative remedies is to dismiss without prejudice." The court thus dismissed the case without prejudice, but stated that it would retain jurisdiction pending the completion of the administrative process. It then ordered the case closed "for statistical purposes."
 
 
 7
 A district court's dismissal of a case without prejudice for failure to exhaust administrative remedies is a final order, giving an appellate court jurisdiction under 28 U.S.C. § 1291. See Pittsburg & Midway Coal Mining Co. v. Yazzie, 909 F.2d 1387, 1389 n. 1 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990); United States v. Orr Water Ditch Co., 914 F.2d 1302, 1306-07 (9th Cir.1990); Klein v. Heckler, 761 F.2d 1304, 1305 (9th Cir.1985); Penny v. Southwestern Bell Tel. Co., 906 F.2d 183 (5th Cir.1990); Hochman v. Board of Educ., 534 F.2d 1094, 1096 (3d Cir.1976); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914 (1976).
 
 
 8
 Although the district court in this case stated that it was "retaining jurisdiction" while "closing the case for statistical purposes," the practical effect of the court's order is to deny the Kobleurs judicial relief until they have exhausted their administrative remedies, and thus this case is no different than those we have cited. We conclude that the court below entered a final order giving this court jurisdiction to hear the appeal under 28 U.S.C. § 1291.
 
 III. THE EXHAUSTION REQUIREMENT
 
 9
 The Kobleurs argue that the district court should not have dismissed this suit because the FEHBA does not require them to exhaust administrative remedies.[4] We find no fault in the district court's well-reasoned decision, and we write to explain our affirmance because of the absence of precedent on this issue in this or any other federal circuit.
 
 
 10
 A. EXHAUSTION UNDER THE FEDERAL EMPLOYEES HEALTH BENEFITS ACT
 
 
 11
 By enacting the FEHBA, Congress sought to "establish[ ] a comprehensive program to provide federal employees and retirees with subsidized health care benefits." Hayes v. Prudential Ins. Co. of America, 819 F.2d 921, 922 (9th Cir.1987), cert. denied, 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988). The FEHBA gives OPM the authority to administer the program by contracting with qualified private carriers to offer a variety of health care plans, 5 U.S.C. § 8902, by distributing information on the available plans to eligible employees, id. § 8907, by promulgating necessary regulations, id. § 8913, and by interpreting the plans to determine the carrier's liability in an individual case, id. § 8902(j). Under section 8902(j), any carrier that provides coverage pursuant to a contract with OPM must agree to be bound by OPM's interpretation of the carrier's plan. See Hayes, 819 F.2d at 924.
 
 
 12
 The doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Although the FEHBA does not expressly prescribe an administrative remedy, agency regulations promulgated under the authority of the statute may create an exhaustion requirement despite the absence of such a requirement within the text of the statute. Coit Indep. Joint Venture v. Federal Sav. & Loan Ins. Corp., 489 U.S. 561, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989).[5] Pursuant to its authority under section 8913, OPM has promulgated regulations that set forth a procedure for OPM review of a carrier's denial of a claim:
 
 
 13
 Each health benefits plan adjudicates claims filed under the plan. An enrollee must initially submit all claims to the health benefits plan in which he or she is enrolled. If the plan denies a claim, the enrollee may ask the plan to reconsider the denial. If the plan affirms its denial or fails to respond as required ..., the enrollee may ask OPM to review the claim.
 
 
 14
 5 C.F.R. § 890.105(a). Section 890.107 of these regulations, entitled "Legal actions," provides in part:
 
 
 15
 An action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan.... [A]n enrollee's dispute of an OPM decision solely because it concurs in a health plan carrier's denial of a claim is not a challenge to the legality of OPM's decision. Therefore, any subsequent litigation to recover on the claim should be brought against the carrier, not against OPM.
 
 
 16
 The determination of whether these regulations actually create an exhaustion requirement is complicated by the use of the word "may" in section 890.105. The Kobleurs contend that, because this section provides for OPM review in permissive terms, such review is not actually required before the claimant may file suit against the carrier. Although no federal circuit has addressed this question, several district courts have. In Bateman v. Blue Cross-Blue Shield, 579 F.Supp. 265 (M.D.Ala.1984), the court considered the OPM regulations in light of the policy of the exhaustion doctrine and concluded "that a person seeking judicial review of a carrier's denial of claims under a federal employees' health benefits policy ... must first exhaust administrative remedies, including review by OPM." Id. at 267. Accord Director, Edward J. Meyer Memorial Hosp. v. Stetz, 433 F.Supp. 323, 325 (W.D.N.Y.1977). The Bateman court rejected the Batemans' argument that the permissive language in section 890.105 "reflects an intent to allow the claimant either to seek OPM review or file court proceedings," stating that:
 
 
 17
 [t]he word ["may"] in its context means just what it says: the claimant may seek OPM review, or not seek review and accept the carrier's decision; the choice is the claimant's. The word, simple and unembellished, fits snugly into the OPM administrative scheme, and advances the judicial policies behind the exhaustion doctrine.
 
 
 18
 579 F.Supp. at 268. Thus, a claimant may accept the carrier's denial or seek OPM review under section 890.105, and then, if OPM concurs with the carrier, the claimant may either accept OPM's concurrence or bring suit against the carrier under section 890.107.
 
 
 19
 But in Skoller v. Blue Cross-Blue Shield, 584 F.Supp. 288 (S.D.N.Y.1984), the court interpreted the OPM regulations to mean that a claimant may either seek OPM review of a carrier's denial under section 890.105 or file suit against the carrier under section 890.107. 584 F.Supp. at 291-93. The Skoller court considered section 8902(j)'s requirement that carriers be bound by OPM's interpretations of their plans, and the legislative history behind this section, see S.Rep. No. 93-511, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 2755, 2757, and concluded that, although Congress provided for the possibility of OPM making a binding interpretation of a plan, "[n]owhere did Congress require that OPM make such a determination." 584 F.Supp. at 290 (emphasis added).
 
 
 20
 Similarly, the court in Eidler v. Blue Cross Blue Shield United, 671 F.Supp. 1213 (E.D.Wis.1987), relied on the legislative history of section 8902(j) to support its determination that exhaustion is not required. Id. at 1215. Relying on a House Report, the Eidler court found that "Congress intended that the OPM's administrative review process would provide an 'adequate administrative remedy' for federal employees and would spare them from being 'forced into courts' to recover benefits due them." Id. (quoting H.R.Rep. No. 459, 93rd Cong., 1st Sess. 2, 7). Thus, "the establishment of administrative review was for the benefit of the claimant, not for insurance companies to preclude a claimant's judicial recourse." Id. at 1216. This understanding of Congress' intent, combined with the permissive language in section 890.105, convinced the court that exhaustion is not required under the FEHBA. Id.
 
 
 21
 The court below chose not to follow any of these decisions because "[n]one of the four decisions accord the proper deference to OPM's regulations and its interpretations of these regulations." Instead, the court was persuaded by the fact that OPM interprets section 890.105 as creating a mandatory exhaustion requirement. Responding to the suggestion "that OPM permit the enrollee to request a direct legal review by the courts in lieu of following administrative procedures for resolution of disputed claims," OPM stated:
 
 
 22
 In the employee benefits area, OPM has traditionally argued for dismissal of court cases when the individual has failed to exhaust administrative remedies. The purpose of OPM's disputed claims review procedures is to assist enrollees in avoiding the costs and time delays associated with legal proceedings. Consequently, we do not favor a regulation calling for review by the courts before all administrative remedies have been exhausted.
 
 
 23
 51 Fed.Reg. 18563 (1986).
 
 
 24
 Following the Supreme Court's mandate that, "[i]n situations in which 'the meaning of [regulatory] language is not free from doubt,' the reviewing court should give effect to the agency's interpretation so long as it is 'reasonable,' " Martin v. OSHRC, --- U.S. ----, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) (quoting Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971)), the court below determined that section 890.105 requires exhaustion. The court found OPM's interpretation to be reasonable because Congress expressly gave OPM the authority to make binding interpretations of the carriers' plans.
 
 
 25
 The Kobleurs rely on Eidler and argue that OPM has exceeded its authority by interpreting section 890.105 to create a mandatory exhaustion requirement because Congress intended the FEHBA to protect federal employees, not the insurance companies. Essentially, the Kobleurs contend that OPM and the court below have transformed what was intended to be a sword for the employees into a shield for the carriers. The Kobleurs rely on the principle that a court should look first to Congressional intent when it determines whether a statutory scheme creates an exhaustion requirement, Amato v. Bernard, 618 F.2d 559, 566-67 (9th Cir.1980), and argue that Congress' intent to protect federal employees overrides OPM's intent to require exhaustion under the FEHBA.
 
 
 26
 We reject this argument because we fail to see how a requirement that federal employees seek OPM review of a denied claim undermines Congress' intent to protect the employees. Congress gave OPM the authority to administer the federal benefits program, to proscribe regulations necessary to meet this end, and to bind carriers to OPM's interpretations of their plans. The delegation of such authority, combined with the absence of any language in the FEHBA precluding the possibility of an exhaustion requirement, convinces us of Congress' faith in OPM's ability to protect federal employees through its administration of the program. The language of section 890.105 is susceptible to both interpretations chosen by the parties here and the cited district court cases. But as the Supreme Court has said:
 
 
 27
 Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt.... [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.
 
 
 28
 Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).
 
 
 29
 We find OPM's interpretation of section 890.105 to be reasonable and consistent with the regulation's language, with the FEHBA, and with the legislative intent. We thus agree with the court below that the regulatory scheme of the FEHBA creates an exhaustion requirement.
 
 B. REQUIRING EXHAUSTION IN THIS CASE
 
 30
 The failure to exhaust an administrative remedy created by statute generally denies jurisdiction in the courts. But when, as in this case, the exhaustion requirement is created by agency regulations, the decision whether to require exhaustion is a matter for district court discretion. Haitian Refugee Center, Inc. v. Nelson, 872 F.2d 1555, 1561 (11th Cir.1989), aff'd, --- U.S. ----, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); Hironymous v. Bowen, 800 F.2d 888, 892 (9th Cir.1986). This court considers two questions when determining whether a district court has abused this discretion: "(1) whether requiring exhaustion in this case would further the policies underlying the doctrine, and (2) whether any exceptions to the doctrine are applicable." In re Inspection of Norfolk Dredging Co., 783 F.2d 1526, 1529 (11th Cir.), cert. denied, 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986).
 
 1. Exhaustion Policies
 
 31
 This court has listed the policies underlying the exhaustion doctrine as follows:(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."
 
 
 32
 Porter v. Schweiker, 692 F.2d 740, 742 (11th Cir.1982) (quoting Patsy v. Florida Int'l Univ., 634 F.2d 900, 903 (5th Cir.1981), rev'd and remanded on other grounds, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and citing McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969)).
 
 
 33
 We agree with the court below that requiring the Kobleurs to exhaust their remedies before OPM furthers these policies. We do not address each of these policies individually, as the district court did, but simply state our agreement with that court that, in light of the role Congress assigned to OPM, it is appropriate to require exhaustion in this case. We are not convinced by the Kobleurs' arguments to the contrary.
 
 2. Exceptions to the Exhaustion Requirement
 
 34
 The Kobleurs contend that three exceptions overcome the policy factors supporting the application of the exhaustion doctrine in this case. Again, we follow the court below in rejecting their contentions.
 
 
 35
 First, the Kobleurs argue that Blue Cross should be estopped from raising their failure to exhaust as a defense because Blue Cross' representative told Ms. Horvath that no appeal was available to the Kobleurs. The district court rejected this argument, finding that the Kobleurs had sufficient notice of OPM review procedures because the 1988 Mutual of Omaha brochure, which the Kobleurs attached to their motion for class certification, clearly explained the review process under section 890.105. Furthermore, the Kobleurs never made any attempt to get a copy of Blue Cross' 1989 brochure or plan, which also gave notice of the review procedures, even after the dispute arose. Finally, the court noted that estoppel in a case like this is based on misrepresentations by the agency itself, and not by a separate company. See Smith v. United States Postal Service, 766 F.2d 205, 207 (6th Cir.1985) (per curiam) (exhaustion not required where EEOC personnel told plaintiffs that EEOC could afford them no relief). We agree with the district court. We require exhaustion here to support OPM's role in administering the federal benefits program and reviewing disputes between the carriers and employees. We do not believe that any harm caused by Blue Cross' misleading statement to Ms. Horvath justifies our disregarding OPM's role in this case.
 
 
 36
 Second, the Kobleurs argue that Blue Cross has waived its right to raise the exhaustion defense. Several months after this suit was filed, Blue Cross tendered $6118.10 to the Kobleurs as payment of one of the claims that served as a basis for this suit. Blue Cross explained that it failed to properly process the Kobleurs' claim for this amount but corrected the mistake as soon as it was discovered. The Kobleurs argue that, by paying this claim prior to raising the exhaustion defense, Blue Cross essentially stipulated to a judgment on this claim and waived any right to contest the court's authority over the case. We cannot place such weight on Blue Cross' payment as to find that it represented "an intentional relinquishment of a known right." See Dade County v. Rohr Indus., Inc., 826 F.2d 983, 990 (11th Cir.1987) (emphasis added). The Kobleurs' original complaint sought recovery of claims wrongfully denied, and Blue Cross has unilaterally tendered the amount it believes it owes. OPM can determine whether it is enough.
 
 
 37
 Finally, the Kobleurs contend that exhaustion should not be required in this case because the available administrative remedy is inadequate. "Courts will not require exhaustion when the administrative remedy is inadequate because it does not exist, or would not provide relief commensurate with the claim, or would unreasonably delay the action and thereby create a serious risk of irreparable injury." Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1556 (11th Cir.1985). The Kobleurs first argue that the administrative remedy would not provide adequate relief because OPM does not have the authority to decide their claims. But the basis of the Kobleurs' original complaint is their contention that Blue Cross, by treating progressive dementia as mental disorders, wrongfully denied or limited claims that it was obligated to cover under the terms of the plan.[6] There could be no breach of either the plan or fiduciary duties unless Blue Cross was in fact obligated to cover these claims. Resolution of this dispute thus requires an interpretation of the plan--a task specifically delegated to OPM under the FEHBA. Secondly, the Kobleurs contend that the administrative remedy is inadequate because they failed to seek OPM review within 90 days of Blue Cross' denial of their claims, as required under 5 C.F.R. § 890.105(c)(3). But because section 890.105(d)(1) provides OPM with the discretion to extend the deadline under exceptional circumstances, we cannot accept this argument. See Barr v. Arkansas Blue Cross and Blue Shield, Inc., 761 S.W.2d 174, 177 (Ark.1988). Should OPM refuse to exercise its discretion and review the Kobleurs' claims, judicial review will be available.
 
 IV. CONCLUSION
 
 38
 We hold that: (1) the regulatory scheme of the FEHBA requires exhaustion of administrative remedies, (2) requiring exhaustion in this case furthers the policies of the exhaustion doctrine, and (3) none of the exceptions to the exhaustion doctrine negate the rationale for requiring exhaustion in this case. We make no determination of the merits of the Kobleurs' case.
 
 
 39
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Kobleurs' suit was based on the rationale of Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990), in which the Ninth Circuit affirmed a district court's finding that autism is not a "mental illness" and the insurance company's denial of benefits on that basis was arbitrary and capricious
 
 
 [2]
 The complaint identified the plaintiff class as those persons (a) who have been diagnosed as suffering from progressive dementia diseases, (b) who have participated in a Blue Cross health insurance plan that provides greater coverage for the treatment of physical disorders than mental disorders, (c) who have been treated for their disease, and (d) whose claims were limited or denied because Blue Cross classified their disease as a mental disorder
 
 
 [3]
 In addition to the original class consisting of those whose claims were limited or denied because their illness was classified as a mental disorder, the Kobleurs sought certification of classes consisting of those:
 (a) whose claims were denied or limited because Blue Cross classified their inpatient psychiatric care as outpatient psychiatric care;
 (b) whom Blue Cross did not properly inform of its reasons for denying or limiting a claim;
 (c) whom Blue Cross did not properly inform of the procedures for administrative review of a denial;
 (d) whose claims were denied or limited because Blue Cross determined that the costs exceeded the "usual, customary, and reasonable" costs for such services;
 (e) whose claims Blue Cross paid after delay without paying interest;
 (f) whose claims were denied or limited because Blue Cross determined that the services were not "medically necessary;" and
 (g) whose claims were denied or limited because Blue Cross determined the services were merely "custodial care."
 
 
 [4]
 The Kobleurs also argue that the existence of fact issues regarding what health plan controls the parties' rights and obligations precludes the district court's order. The Kobleurs contend that Mutual of Omaha was the underwriter for the Alliance plan in 1988, and that they never received notice that Blue Cross would replace Mutual of Omaha in 1989. The Kobleurs did not learn of this replacement until a hospital rejected their Mutual of Omaha card in August 1989. Thus, the Kobleurs contend, a fact issue exists as to whether the parties' rights and obligations should be controlled by the 1988 Mutual of Omaha plan, the 1989 Blue Cross plan, or a "fair" plan implied by law
 We reject this argument for two reasons. First, the argument comes too late because the Kobleurs brought suit against Blue Cross alleging that Blue Cross breached the terms of its policy. Their own complaint thus foreclosed this issue. Second, the district court did not grant summary judgment, but rather dismissed the case without prejudice. Such an order would not be premature even if this fact issue did exist.
 
 
 [5]
 The Supreme Court in Coit held that the administrative procedure provided in the regulations of the Federal Savings & Loan Insurance Corp. (FSLIC) were "inadequate" because they failed to "place a clear and reasonable time limit on FSLIC's consideration" of a creditor's claim. 109 S.Ct. at 1364, 1375-76. Although the parties in the present case have not raised the issue, we note that OPM's regulations do not contain such a flaw. After OPM receives an enrollee's request for review of a denied claim, OPM may request or obtain additional information from the enrollee, a physician, or any other source. 5 C.F.R. § 890.105(2). Section 890.105(4) then requires OPM to render its decision within 30 days after it receives the necessary evidence. We note that the regulations do not expressly require OPM to obtain the additional evidence within any particular timeframe. See 5 C.F.R. § 890.105(2). But reading these regulations together, we construe them to require OPM to either request additional information or render its decision within 30 days of its receipt of the enrollee's request for review. As a result, we do not find OPM's administrative review procedure to be "inadequate" under Coit
 
 
 [6]
 We find no entry in the record granting the Kobleurs' motion to amend their complaint, and thus treat their original complaint as the only live pleading before us. We also note that, because the district court has not granted the Kobleurs' motion for class certification, we need not consider whether OPM is able to resolve a class dispute. Nor need we consider at this point the potential issue of whether a class action under the FEHBA would ever be appropriate in light of the requirement that each claimant seek review by OPM before seeking judicial relief