Anne **KENNEDY**, Michael **Chubre** (as representatives of Emily Chubre), on behalf of themselves and others similarly situated, Plaintiffs,

v.

**EMPIRE BLUE CROSS AND BLUE SHIELD, Defendant.**

No. 91 Civ. 8492 (TPG).

United States District Court,
S.D. New York.

Aug. 7, 1992.

Whitney North Seymour, Brown & Seymour (Craig A. Landy, of counsel), New York City, for plaintiffs.

James J. Sabella, Breed, Abbott & Morgan, New York City, for defendant.

OPINION

GRIESA, District Judge.

This is a class action. Each of the plaintiffs subscribes to one of several major medical insurance policies issued by defendant Empire Blue Cross & Blue Shield. The complaint alleges that in 1991 Empire changed its geographic formula for computing rates of reimbursement for medical procedures. Plaintiffs claim that this change was a breach of contract, resulting

in decreased coverage for the class members.

Empire now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, on the ground that plaintiffs have failed to exhaust their administrative remedies. On this issue, plaintiffs have presented materials in addition to the complaint. The court has considered these materials and will therefore treat the present motion as one for summary judgment under Rule 56.

For the reasons stated below, the motion is granted and the action is dismissed.

### The Complaint

This suit began in New York State Supreme Court. Empire removed the case to federal court because some of the policies at issue are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq., known as ERISA. There is no challenge to the court's jurisdiction to decide the present motion.

The complaint alleges that the four named plaintiffs each subscribe to one of three different Empire medical insurance plans: TraditionPlus, Wraparound or the Federal Employees Program. The complaint also refers to an undisclosed number of "similarly situated" plaintiffs who subscribe either to these three policies or to unnamed "similar contracts." Plaintiffs provide no further information about these "similar contracts."

According to the complaint, Empire computes the maximum amount it will pay for a medical procedure by examining "customary charges." The complaint explains that Empire sets customary charges in the New York area by looking at charge data for doctors performing similar procedures over a period of time in a given geographic zone.

Plaintiffs state that prior to January 1, 1990 Empire had computed customary charges based on three large geographic zones. For example, all of Manhattan was one zone. The complaint alleges that on January 1, 1990 Empire switched to a new system called "Zip Code Pricing." The new system, plaintiffs claim, created numerous smaller geographic zones drawn along United States Postal Service Zip Code lines.

The gravamen of plaintiffs' complaint is that Zip Code Pricing has reduced their rates of reimbursement. They assert that Empire's purpose in switching to Zip Code Pricing was to deprive subscribers of their rightful compensation. They further contend that, after switching to Zip Code Pricing, Empire continued to use the old three zone system for calculating charges in its dealings with Medicare. The result, plaintiffs claim, is that Empire operated with a "double set of books," allowing it to pay less to plaintiffs while collecting the same amount from Medicare.

The complaint alleges that the rates of reimbursement applicable to plaintiffs under Zip Code Pricing were well below what was due under the contracts. It is further alleged that plaintiff Anne Kennedy, upon discovering that her reimbursement for certain medical services performed in February 1990 was below the payment previously made for similar services, lodged a protest with Empire through her representative, Yvonne S. Archer. The complaint alleges that on July 31, 1990 Empire wrote to Archer explaining the new system and asserting that the payment for the February 1990 services had been correct. Kennedy is covered by the Federal Employees Program.

### Materials Submitted Other Than The Complaint

In view of the fact that Empire has raised the issue of exhaustion of administrative remedies, plaintiffs have submitted certain correspondence in addition to the complaint.

The representative of plaintiff Kennedy, referred to in the complaint, was actually Dr. Joel S. Archer, who wrote Empire on May 18, 1990 complaining about the reimbursement. His letter is submitted by plaintiffs. The letter of response by Empire dated July 31, 1990, addressed to Yvonne S. Archer, is annexed to the complaint, as earlier described. Joel Archer and Yvonne Archer are in the same medical office.

Also submitted with plaintiffs' papers are a letter from Kennedy's attorney to Empire dated October 26, 1990, and the letter of response from Empire dated December 27, 1990. Empire refused to take any action to adjust the reimbursement.

## DISCUSSION

The three named policies are governed by two different federal statutes. TraditionPlus and Wraparound are governed by ERISA. The Federal Employees Program, the one to which plaintiff Kennedy subscribes, is governed by the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901–8913 (1988), known as FEHBA.

Empire argues that, under both statutes, the class members are required to exhaust their administrative remedies before filing suit against an insurer. Exhaustion of administrative remedies under the ERISA plans would consist of an appeal to the insurance carrier after the carrier's initial denial of a claim. *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). Under the FEHBA plan, there is an additional step available to a claimant after the appeal to the carrier—*i.e.*, an appeal to the Office of Personnel Management (OPM). 5 C.F.R. 890.105.

There is no contention that any member of the plaintiff class covered under an ERISA plan has appealed to the insurance carrier. There is no contention that Kennedy or any member of the class covered under the FEHBA plan has appealed to the OPM. However, plaintiffs argue that Empire's rejection of Kennedy's complaint "effectively exhausted administrative remedies for the entire plaintiff class."

Various judicial decisions have dealt with the question of exhaustion of administrative remedies presented here.

■ It is well established that, under insurance contracts governed by ERISA, policy holders must exhaust their administrative remedies before filing suit against an insurance carrier. *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986).

■ With respect to the exhaustion requirements for plans governed by FEHBA, however, there has been a split of authority. The main point of contention arises from the use of the word "may" in the relevant C.F.R. provision:

Each health benefits plan adjudicates claims filed under the plan. An enrollee must initially submit all claims to the health benefits plan in which he or she is enrolled. If the plan denies a claim, the enrollee *may* ask the plan to reconsider the denial. If the plan affirms its denial or fails to respond as required by paragraph (b) of this section, the enrollee *may* ask OPM to review the claim.

5 C.F.R. 890.105 (emphasis added).

In *Skoller v. Blue Cross–Blue Shield*, 584 F.Supp. 288 (S.D.N.Y.1984), the court interpreted the word "may" to mean that claimants may pursue OPM review, but are not required to do so before filing suit against an insurance carrier. The court stated that "neither Congress nor OPM has manifested any intent to make OPM review either an exclusive remedy or a mandatory prerequisite to judicial resolution of disputes over contract interpretation." *Id.* at 291; *see also Eidler v. Blue Cross Blue Shield United*, 671 F.Supp. 1213, 1215 (E.D.Wis.1987) ("It would seem strange that Congress would intend foreclosure of judicial review with such permissive language").

Other courts, however, have held that section 890.105 does require exhaustion. *Bateman v. Blue Cross–Blue Shield*, 579 F.Supp. 265, 268 (M.D.Ala.1984) (The claimant "may seek OPM review, or not seek review and accept the carrier's decision; the choice is the claimant's."); *see also Director, Edward J. Meyer Memorial Hosp. v. Stetz*, 433 F.Supp. 323, 325 (W.D.N.Y.1977) ("Since no record exists of exhaustion of this administrative remedy, the court has no jurisdiction over the claim.").

In 1986 OPM explained its official position on section 890.105.

In the employee benefits area, OPM has traditionally argued for dismissal of court cases when the individual has

failed to exhaust administrative remedies. The purpose of OPM's disputed claims review procedures is to assist enrollees in avoiding the costs and time delays associated with legal proceedings. Consequently, we do not favor a regulation calling for review by the courts before all administrative remedies have been exhausted.

51 Fed.Reg. 18,562 (1986).

Neither the Second Circuit nor the Southern District has revisited section 890.105 since OPM announced this interpretation. The 11th Circuit, however, has recently interpreted section 890.105 in light of the official OPM interpretation. The 11th Circuit held that section 890.105 requires OPM review before a claim can be brought directly against an insurance carrier. *Kobleur v. Group Hospitalization & Medical Servs.*, 954 F.2d 705 (11th Cir.1992). The court relied on *Martin v. O.S.H.R.C.*, 111 S.Ct. 1171, 1176 (1991), which held that a court must give effect to an agency's interpretation of its own regulation so long as the interpretation is reasonable.

OPM's interpretation of section 890.105 is entirely reasonable. As the *Kobleur* court stated:

Congress gave OPM the authority to administer the federal benefits program, to proscribe regulations necessary to meet this end, and to bind carriers to OPM's interpretations of their plans. The delegation of such authority, combined with the absence of any language in the FEHBA precluding the possibility of an exhaustion requirement, convinces us of Congress' faith in OPM's ability to protect federal employees through its administration of the program.

954 F.2d at 711.

This court agrees with the 11th Circuit and holds that section 890.105 contains an exhaustion requirement.

Both ERISA and FEHBA therefore require claimants to exhaust administrative remedies before filing a lawsuit against an insurance carrier. No plaintiff, however, has done so. Kennedy is the only member of the plaintiff class who has even pursued carrier review, and she has not attempted OPM review.

Plaintiffs seek to avoid the exhaustion requirement by invoking the futility doctrine. They claim that Empire's rebuff of Kennedy's complaint about Zip Code Pricing proves that administrative review would be useless.

The futility doctrine allows courts to release plaintiffs from exhaustion requirements when plaintiffs make a "clear and positive showing" that pursuing administrative remedies would be futile. *Fizer v. Safeway Stores*, 586 F.2d 182, 183 (10th Cir.1978). Since none of the TraditionPlus or Wraparound customers has attempted carrier review and none of the Federal Employees Program customers has attempted OPM review, it is impossible for this court to say that plaintiffs have made a "clear and positive showing" that these attempts would have been futile.

This court therefore lacks jurisdiction to hear plaintiffs' claims because they have not exhausted their administrative remedies. The action is dismissed.

SO ORDERED.