Mark A. LIEBERMAN, M.D., Plaintiff,

v.

NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO and Continental Assurance Company, Defendants.

No. 91 Civ. 1820 (MGC).

United States District Court, S.D. New York.

April 27, 1993.

Mark A. Lieberman, M.D., pro se.

Skadden, Arps, Slate, Meagher & Flom by Jeffrey Glekel, Christopher R. Gette, New York City, Gordon & Barnett by James R. Barnett, Scott R. Jamison, Washington, DC, for defendants.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Dr. Mark A. Lieberman sues National Postal Mail Handlers Union (the "Union") and Continental Assurance Company ("Continental") for fees allegedly owed him under the Mail Handlers Benefit Plan (the "Plan"). Plaintiff, the assignee of Plan enrollees' claims, alleges that defendants owe him $296,024.15 for ophthalmology services provided to Plan enrollees at Journal Square Medical Center ("JSM") between November 18, 1986 and December 10, 1987. Plaintiff also claims that he is entitled to payment under the equitable doctrines of quantum meruit and estoppel (the "equitable claims").

Plaintiff has moved to amend the complaint to assert a claim for punitive damages as well as for fees allegedly owed him for services provided to Plan enrollees at the Federal Plaza Medical Association ("FPMA").

Defendants move for summary judgment dismissing the complaint on the grounds that (1) plaintiff's breach of contract claim is barred because he failed to exhaust his administrative remedies, (2) plaintiff's breach of contract claim is time-barred, and (3) federal law preempts plaintiff's equitable claims.

For the reasons discussed below, this court lacks jurisdiction to hear plaintiff's breach of contract claim because he has not exhausted his administrative remedies. Therefore, this claim is dismissed without prejudice. Plaintiff's equitable claims are dismissed because they are preempted by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*

## BACKGROUND

The Union is an unincorporated labor organization whose principal office is located in Washington, D.C. The Union sponsors the Plan, a Federal Employee Health Benefits plan established and operated pursuant to the FEHBA.

Under the FEHBA, the United States Office of Personnel Management ("OPM") contracts with private carriers to provide health benefits for federal employees, and supervises the carriers.

The Plan was established by procurement contract No. CS 1146 negotiated between the Union and OPM. In 1986 and 1987, information regarding the Plan's benefits and the procedure for administrative review of claims under 5 C.F.R. § 890.105 was contained in the Plan's contract statement of benefits (the "brochure") which is incorporated into the procurement contract.

Continental is an Illinois corporation which maintains an office in Rockville, Maryland where it processes Plan claims. During 1986 and 1987, Continental underwrote and administered the Plan pursuant to subcontracts with the Union. Plaintiff is an ophthalmologist whose office is located in New York City.

In 1986 and 1987, Continental, as administrator of the Plan, processed claims for payment of health benefits submitted to the Plan. Continental paid charges which it determined were covered under the Plan, and denied payment on those charges which it

determined were not covered. When it determined that charges were not covered, Continental issued a letter to the Plan enrollee informing him that his claim had been denied, and stating the reason for the denial. (Def's 3–G Stmt ¶ 4.)

From September 21, 1987 through 1988, Continental pursued a program of prepayment review for all claims, whether assigned or unassigned, received from JSM and FPMA. It answered each claim form with a letter requesting back-up documentation and completion of a questionnaire by the Plan enrollee who received treatment. (Raymond Decl. ¶ 5.) Under the prepayment review program, Continental did not pay the claim until it received both the back-up documentation and the Plan enrollee's response. (*Id.*) When it determined that Plan benefits were not payable on an assigned claim, Continental issued both to the Plan enrollee and to the provider a denial letter which stated the reason for the denial. (*Id.*) Continental adopted this program because it had detected a pattern of irregularities in claims received from JSM and FPMA. Pursuant to this program, Continental denied a number of claims submitted by plaintiff.

During a March 20, 1989 meeting between plaintiff and Continental, plaintiff alleged that Continental owed him payment on claims that the Plan had denied. (Def's 3–G Stmt ¶ 17.) Plaintiff repeated this allegation at a meeting with Continental held on May 11, 1989. In a May 15, 1989 letter to plaintiff, Continental responded by stating that it was defendants' position that "no sums currently are due or owing to you based on any claims submitted either by you, or on your behalf, by, or through, FPMA or JSM." (*Id.*)

Plaintiff commenced this action against defendants in the Supreme Court of the State of New York. Defendants removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is founded upon 28 U.S.C. § 1331, pendent jurisdiction, and 5 U.S.C. § 8912, the jurisdictional provision of the FEHBA.

## DISCUSSION

### 1. *Exhaustion of Administrative Remedies*

Defendants argue that plaintiff's claim for breach of contract should be dismissed because plaintiff failed to exhaust the required administrative remedies prior to commencing this action. At issue is whether the regulatory scheme of the FEHBA requires exhaustion.

Pursuant to 5 U.S.C. § 8913, OPM has the authority to promulgate regulations necessary to carry out the FEHBA. OPM has issued 5 C.F.R. § 890.105(a) which sets forth a procedure for OPM review of claims denied by a carrier:

> Each health benefits plan adjudicates claims filed under the plan. An enrollee must initially submit all claims to the health benefits plan in which he or she is enrolled. If the plan denies a claim, the enrollee may ask the plan to reconsider the denial. If the plan affirms its denial or fails to respond as required ..., the enrollee may ask OPM to review the claim.

In 1986, OPM announced its interpretation that exhaustion is required:

> In the employee benefits area, OPM has traditionally argued for dismissal of court cases when the individual has failed to exhaust administrative remedies. The purpose of OPM's disputed claims review procedures is to assist enrollees in avoiding the costs and time delay associated with legal proceedings. Consequently, we *do not favor a regulation calling for review by the courts before all administrative remedies have been exhausted.*

51 Fed.Reg. 18563 (1986).

The Second Circuit has not yet addressed whether § 890.105 requires exhaustion. The only appellate court which has addressed this issue held that exhaustion is required. In *Kobleur v. Group Hospitalization and Medical Services Inc.,* 954 F.2d 705 (11th Cir. 1992), the court acknowledged that the language of the regulation is ambiguous. However, the court found OPM's interpretation of § 890.105 to be reasonable, explaining that:

> Congress gave OPM the authority to administer the federal benefits program, to

prescribe regulations necessary to meet this end, and to bind carriers to OPM's interpretations of their plans. The delegation of such authority, combined with the absence of any language in the FEHBA precluding the possibility of an exhaustion requirement, convinces us of Congress' faith in OPM's ability to protect federal employees through its administration of the program.

*Id.* at 711.

The court relied on *Martin v. OSHRC,* 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), in which the Supreme Court stated that "[i]n situations in which 'the meaning of [regulatory] language is not free from doubt,' the reviewing court should give effect to the agency's interpretation so long as it is 'reasonable.'" (quoting *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 1323, 28 L.Ed.2d 625 (1971)), and held that § 890.105 does require exhaustion.

The one Southern District opinion that addressed this issue after OPM announced its official position on § 890.105 followed the Eleventh Circuit and held that exhaustion is required. *Kennedy v. Empire Blue Cross and Blue Shield,* 796 F.Supp. 764 (S.D.N.Y. 1992).[1]

■ While I agree with the Eleventh Circuit that the language of § 890.105 is ambiguous, I also find that OPM's interpretation of the regulation is reasonable. Therefore, in light of the well-established rule that "an agency's construction of its own regulations is entitled to substantial deference," *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) (citations omitted), I conclude that § 890.105 requires exhaustion of review by OPM.

Plaintiff has not sought OPM review of the disputed claims and therefore has not exhausted his administrative remedies. However, plaintiff argues that administrative review would be useless because Continental and OPM are not qualified to review ophthal-

mology claims since neither employs an ophthalmologist.

■ The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). However, there are several exceptions to the exhaustion requirement, one of which is that exhaustion is not required when administrative appeal would be futile. *Guitard v. U.S. Secretary of the Navy,* 967 F.2d 737, 741 (2d Cir.1992) (citations omitted).

■ Plaintiff has not established the futility of administrative appeal. Continental has submitted proof that the majority of the disputed claims were not so complex that review by an ophthalmologist was necessary; most of the claims involved ophthalmologic conditions which the 1989 edition of *General Ophthalmology,* a medical treatise, characterized as "common," such as conjunctivitis. (Strang Decl., Ex.B.) Moreover, Continental has on occasion retained outside consultants to review claims. In fact, Coordinated retained a board certified ophthalmologist to review plaintiff's disputed claims. (Supp. Jamison Decl. ¶ 4.) Plaintiff has proffered no evidence that OPM, which is responsible for reviewing disputed claims under all FEHB plans, would not also employ consultants when necessary. Finally, Continental and OPM were capable of reviewing the majority of plaintiff's disputed claims without outside assistance. Plaintiff provided defendants with a list of 1,232 claims which he alleges were not paid. Continental denied only 101 of the 1,232 disputed claims on grounds that may have required knowledge of ophthalmology. Ninety-four of plaintiff's claims were denied because they contained charges for services for which defendants had already issued the maximum benefits payable for routine diagnostic, X-ray and lab-

1. In *Skoller v. Blue Cross–Blue Shield,* 584 F.Supp. 288, 291 (S.D.N.Y.1984), a case decided before OPM announced its interpretation of § 890.105, the court held that FEHBA did not require exhaustion of administrative remedies.

The court reasoned that "neither Congress nor OPM has manifested any intent to make OPM review either an exclusive remedy or a mandatory prerequisite to judicial resolution of disputes over contract interpretation."

oratory services, (plaintiff disputes the characterization of these services as routine or diagnostic), and seven claims were denied because the services rendered by plaintiff were not "medically necessary." (Strand Decl. ¶ 6(h).) According to defendants, the remaining claims were denied for the following reasons: either plaintiff, the Plan enrollee or both failed to supply Continental with requested information (150); claims contained charges for services excluded under the Plan (174); claims duplicated other claims identified on the list (12); the office visit billed by plaintiff was the Plan enrollee's first office visit in that calendar year or benefits had already been paid for that visit (11); Plan coverage of the recipient had terminated prior to provision of services (9); FPMA, not plaintiff, was the assignee identified on the claim (8); the recipient of the services was an ineligible dependent of a Plan enrollee (8); the Plan was the secondary insurer of the Plan enrollee, and there was no indication that the claim was ever submitted to the primary insurer (1). Continental withheld decision on 70 of plaintiff's claims and requested information concerning either other insurance or an explanation of insurance benefits from the Plan enrollee's other insurance carrier. Continental has never received this information despite numerous requests. Continental issued benefit checks to plaintiff on 616 of the claims, and issued a benefit check to the enrollee on the one claim for which benefits had not been assigned. (Strand Decl. ¶ 6.) Continental could not identify 71 of the claims which plaintiff alleged were not paid.

Finally, plaintiff cannot argue that exhaustion should not be required because the administrative review process is now closed to him as a result of his failure to comply with the time frames set forth in § 890.105.

Pursuant to § 890.105, plaintiff was required to submit a written request for reconsideration within one year after he was notified that his claims were denied. In their 3–G Statement, defendants assert that plaintiff never requested that Continental reconsider its denial of the disputed claims. However, in a March 20, 1989 meeting with defendants, plaintiff alleged that Continental owed him payment on disputed claims. (Jamison Decl. ¶ 2.) Plaintiff repeated this allegation during a May 11, 1989 meeting. (Id.) Defendants point to no reason why these allegations do not constitute requests for reconsideration. In fact, in their papers, defendants acknowledge such a possibility. (Def's Mem. at 16, n. 9.) On May 15, 1991, Continental informed plaintiff that no payments were due him. Plaintiff was required to seek OPM review within 90 days of Continental's denial of his claims. It is undisputed that plaintiff never sought OPM review. However, 5 C.F.R. § 890.105(d)(1) provides OPM with discretion to extend the 90–day deadline when a person shows he was never notified of the time limit or was prevented by circumstances beyond his control from submitting a timely request for review. Therefore, OPM has the discretion now to review plaintiff's claims, and I will not presume that OPM will decline to do so.

Since this court lacks jurisdiction to hear plaintiff's breach of contract claim because he has not exhausted his administrative remedies, it is unnecessary to address defendants' argument that this claim is time barred or plaintiff's motion to amend his complaint to recover fees for services rendered at FPMA and for punitive damages.

### 2. Preemption

■ Plaintiff's second claim is that he is entitled to full payment because defendants "retained without objection" the assigned claims that he submitted. (Compl. ¶ 9.) Plaintiff's third claim is that he is entitled to payment under the theory of quantum meruit. (Id. at ¶ 12.) Defendants argue that these equitable claims are preempted pursuant to 5 U.S.C. § 8902(m)(1), which provides:

The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

In Hayes v. Prudential Ins. Co., 819 F.2d 921, 926 (9th Cir.1987), a leading case on FEHBA preemption, the court determined

that state law tort claims for breach of the duty of good faith and fair dealing, breach of the California Insurance Code, and breach of fiduciary duty were preempted under the FEHBA because they were inconsistent with the Plan since they "invariably expand obligations under the terms of the Plan." In *Myers v. United States,* 767 F.2d 1072, 1074 (4th Cir.1985), the plaintiff sued to compel his FEHBA plan to pay benefits owed him, and sought attorneys fees allowed by state law. The court held that the claim for attorneys fees was preempted under the FEHBA because "... a state law which purports to allow recovery of additional benefits not contemplated by a federal insurance contract must be deemed inconsistent." In *FPMA v. Palermino,* No. 87 Civ. 6777, 1991 WL 29201 (S.D.N.Y. Feb. 22, 1991), I followed *Hayes* and *Myers* and held that the plaintiffs' state law tort claims, breach of the duty of good faith and fair dealing, breach of common law fiduciary duties, and tortious interference with contractual relations, were preempted by the FEHBA.

Plaintiff seeks payment for services rendered to Plan enrollees under the equitable doctrines of estoppel and quantum meruit. The procurement contract governs defendants' obligations to Plan enrollees, and therefore to plaintiff as assignee of enrollees' claims. State law which affords a remedy beyond that provided by the procurement contract is inconsistent with the procurement contract, and is therefore preempted under 5 U.S.C. § 8902(m)(1).

## CONCLUSION

This court lacks jurisdiction to hear plaintiff's claim for breach of contract because plaintiff has not exhausted his administrative remedies. Therefore, that claim is dismissed without prejudice. Plaintiff should seek OPM review of Continental's denial of his claims. Plaintiff's equitable claims are preempted under 5 U.S.C. § 8902(m)(1). Accordingly, defendants' motion for summary judgment dismissing those claims is granted.

SO ORDERED.