**ST. MARY'S HOSPITAL**

v.

**CAREFIRST OF MARYLAND, INC.**

**No. CIV.A.WMN–01–1260.**

United States District Court, D. Maryland.

March 1, 2002.

---

Malinda S. Siegel, Linda M. Fotheringill, Siegel and Fotheringill LLC, Towson, MD, for Plaintiff.

Charles J. Steele, Washington, DC, Mark B. McCoy, Owings Mills, MD, Anthony F. Shelley, Miller and Chevalier Chtd., Washington, DC, for Defendant.

### MEMORANDUM

NICKERSON, District Judge.

Before the Court is Defendant's Motion for Partial Summary Judgment (Paper No. 11). The motion has been fully briefed and is ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion will be granted.

## I. BACKGROUND

Plaintiff is a hospital incorporated and licensed in Maryland. Defendant is a Blue Cross Blue Shield health insurance company operating in Maryland. In 1986 and 1995, Plaintiff entered into written agreements with Defendant, whereby Plaintiff would provide medical services to eligible subscribers of Defendant's health benefit plans, in return for payment from Defendant. In this lawsuit, Plaintiff alleges that Defendant breached the 1995 agreement by not providing full payment for services rendered by Plaintiff to 24 CareFirst subscribers during 1999 and 2000. Specifically, Plaintiff claims that Defendant wrongfully denied payment for a portion of the hospital services received by each patient, on the ground that the duration of services had been longer than medically necessary. See, Pl.'s Opp. at 6. Plaintiff asserts that the services were medically necessary, and that Defendant's failure to pay for them in full constitutes a breach.

The instant motion relates only to 7 of the 24 hospital patients. Those 7 patients were enrollees in a nationwide government health plan for federal employees, called the Service Benefit Plan ("SBP" or "the Plan"). The SBP was created pursuant to the Federal Employees Health Benefits Act (FEHBA), which authorizes the United States Office of Personnel Management (OPM) to contract with insurers (referred to as "carriers") to provide health benefits for federal employees. 5 U.S.C. §§ 8901–8914. The Plan was formed by contract between OPM and an association of Blue Cross Blue Shield companies. Defendant is the Blue Cross Blue Shield company administering the Plan in Maryland.

Federal employees enrolled in the SBP receive benefits under the terms of the government contract between OPM and the Blue Cross Blue Shield association, but are not themselves party to the contract. See, *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74, 76 (4th Cir.1993). Under FEHBA, OPM issues to all enrollees a "Statement of Benefits," which sets forth the "benefits, including maximums, limitations, and exclusions," the "procedure for obtaining benefits," and the "principal provisions of the plan affecting the enrollee and any eligible family members." 5 U.S.C. § 8907(b). The Statement of Benefits for the SBP is incorporated by reference into the contract between OPM and the Blue Cross Blue Shield association, and is the official description of benefits terms. See, 1999 Statement of Benefits (Def.'s Exh. A); 2000 Statement of Benefits (Def.'s Exh. B). One limitation contained in the SBP's Statement of Benefits is that "[b]enefits are provided only for services and supplies that are medically necessary." 1999 Statement at 13; 2000 Statement at 41. The statements go on to define criteria for determining whether services are "medically necessary." 1999 Statement at 51; 2000 Statement at 53.

Under the provisions of FEHBA, OPM has established a mandatory administrative remedy for those who believe that a carrier has wrongfully denied benefits. 5 C.F.R. § 890.105. The remedy is to be invoked after the exhaustion of all internal appeals with the carrier. *Id.* If OPM finds that the carrier incorrectly denied benefits, the carrier is contractually obligated to pay the benefits. 5 U.S.C. § 8902(j). A party who is dissatisfied with OPM's findings may sue the agency in federal court. *See,* 5 C.F.R. §§ 890.107(c), 890.107(d)(1). These regulations providing for OPM review "appl[y] to covered individuals and to other individuals or entities who are acting on behalf of a covered individual and who have the covered individual's specific written consent to pursue payment of the disputed claim." 5 C.F.R. § 890.105(a)(2).

This remedial scheme is also outlined in the SBP Statements of Benefits. 1999 Statement at 38–39; 2000 Statement at 12–14.

Plaintiff filed this lawsuit in the Circuit Court for St. Mary's County, asserting claims of breach of contract, relief from forfeiture, and quantum meruit. Within 30 days, Defendant removed the action to this Court. Paper No. 1. In support of removal, Defendant argued that Plaintiff's claims regarding the 7 Plan enrollees "arise under" federal law, either because they are governed by federal common law, or alternatively, because Plaintiff's state law causes of action are completely preempted by FEHBA.[1] Stating those same alternative grounds, Defendant now moves for summary judgment as to the 7 Plan enrollees, arguing that because Plaintiff did not comply with FEHBA's mandatory remedial scheme of administrative review, its claims must fail as a matter of law.

Plaintiff opposes Defendant's motion on the ground that there is no federal jurisdiction over this matter. Although Plaintiff had not previously opposed removal, a party may challenge subject matter jurisdiction at any point during litigation, *see* Fed.R.Civ.P. 12(h)(3), and the Court will necessarily address the problem of jurisdiction at the outset.

## II. FEDERAL JURISDICTION OVER THIS MATTER

■ The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to district court. 28 U.S.C. § 1441. District courts have original jurisdiction over, *inter alia,* "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, whether the plaintiff's claims "arise under" federal law is governed by the "well-pleaded complaint rule." *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (*citing Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). Under this rule, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if "the defense is the only question truly at issue in the case." *Id.* at 14, 103 S.Ct. 2841.

■ One exception to the well-pleaded complaint rule is the doctrine of "complete preemption." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This doctrine applies when the preemptive force of a federal cause of action is so strong that it "converts an ordinary state common law complaint into one stating a federal claim ...". *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). There are two requirements for complete preemption: (1) the statute must contain "civil enforcement provisions" that encompass the allegations in the case, and (2) Congress must have clearly manifested an intent to preempt the field. *Id.* at 65–66, 107 S.Ct. 1542.

■ Prior to 1999, the Fourth Circuit had held that claims regarding the denial of benefits under FEHBA are governed by "federal common law." *Caudill,* 999 F.2d 74. In so deciding, the court declined to answer whether FEHBA completely preempts state law claims. *Id.* at 77. The *Caudill* opinion, however, strongly emphasizes the "uniquely federal interest" in regulating the provision of health care and

---

1. The parties agree that no diversity jurisdiction exists in this case.

benefits to federal employees. *Id.* at 78. The court also observed that the application of state law to FEHBA claims would undermine the uniformity envisioned by Congress when it enacted FEHBA, by creating a "patchwork quilt" of benefits that "varied from state to state under the same contract." *Id.* at 79.

The principles enunciated in *Caudill* have been echoed in more recent district court cases, in this circuit and elsewhere, holding that FEHBA completely preempts state law in suits involving the nature and extent of coverage and benefits under FEHBA plans. See, *Kight v. Kaiser Foundation Health Plan of the Mid–Atlantic States,* 34 F.Supp.2d 334 (E.D.Va. 1999); *Zukor v. INOVA Health Servs.,* No. CA–99–01909–A, Mem. Op. at 8–10 (E.D.Va. Feb. 23, 2000); *Farrow v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* No. 00–24–A, Mem. Op. at 5–7 (E.D.Va. Feb. 26, 2000); *Doyle v. Blue Cross Blue Shield of Illinois,* 149 F.Supp.2d 427, 432–33 (N.D.Ill.2001); *Rievley v. Blue Cross Blue Shield of Tenn., Inc.,* 69 F.Supp.2d 1028, 1031–37 (E.D.Tenn.1999); *Carter v. Blue Cross Blue Shield of Fla., Inc.,* 61 F.Supp.2d 1237, 1240–41 (N.D.Fla.1999).

Courts finding complete preemption have been particularly compelled to do so by a 1998 amendment to FEHBA's preemption provision. The amended provision reads as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation

issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1) (as amended 1998). The amendment eliminated language that had previously limited preemption "to the extent that such [state] law or regulation is inconsistent with such contractual provisions." § 8902(m)(1) (1996). Courts have found this change in language to be persuasive evidence of congressional intent to completely preempt state law.

Courts have been further persuaded by the legislative history of the 1998 amendment, when considered along with the amended language, as a manifestation of congressional intent to completely preempt state law when the terms and benefits of FEHBA plans are at issue.[2] The House Report discussing the amendment states in pertinent part:

> This amendment confirms the intent of Congress (1) that FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) *completely displace* State or local law relating to health insurance or plans and (2) that this *preemption authority* applies to FEHB program plan contract terms which relate to the provision of benefits or coverage, including managed care programs.

*Kight* 34 F.Supp.2d at 339 (*quoting* H.R. No. 105–374 (1997), at 16) (emphasis added).

This Court is in agreement with others as to Congress's manifested intent that FEBHA completely preempts state law. The question remains whether Plaintiff's claims are encompassed by FEHBA's civil enforcement provisions, which would be

---

**2.** Plaintiff's argument against finding complete preemption relies almost exclusively on one case, *Ramirez v. Humana, Inc.,* 119 F.Supp.2d 1307 (M.D.Fla.2000), which did not examine the above-quoted legislative his-

tory of the 1998 preemption amendment in its analysis. That court has been criticized for its apparent omission, *see Doyle,* 149 F.Supp.2d at 433, and this Court finds *Ramirez* similarly unpersuasive.

necessary to find complete preemption in the case at bar. The decisions finding complete preemption by FEHBA have found that FEHBA's civil enforcement provisions (i.e., the OPM administrative remedy and subsequent judicial review) encompass a variety of state tort and contract claims. *See, e.g., Rievley*, 69 F.Supp.2d at 1034 (preemption for claims of breach of contract, breach of fiduciary duty, and bad faith); *Carter*, 61 F.Supp.2d at 1239–40 (preemption for breach of contract and fraudulent inducement); *Kight*, 34 F.Supp.2d at 340 (preemption for claims of direct liability based on administration of plan, tortious interference with contract, and fraud, but not for vicarious liability for physician). *But see, Weathington v. United Behavioral Health*, 41 F.Supp.2d 1315, 1321 (M.D.Ala.1999) (rejecting complete preemption where health care counselor brought state law action seeking payment of benefits, but omitting analysis of 1998 preemption amendment and legislative history).

Plaintiff attempts to distinguish its claims from those in cases where FEHBA preemption was found. Primarily, the hospital argues that its claims fall outside the FEHBA enforcement provisions because, unlike plaintiffs in other cases, Plaintiff is neither an enrollee in the SBP, nor is it a provider with an assignment of rights from SBP enrollees. Plaintiff also argues that its contract with Defendant does not incorporate the terms of the SBP, nor are its claims derivative of any SBP enrollees' claims.

The fact that Plaintiff is neither an enrollee nor an assignee of an enrollee's rights does present an apparently novel situation. Neither party was able to cite case law involving a plaintiff in the hospital's precise position. *Cf. Lieberman v. National Postal Mail Handlers Union*, 819 F.Supp. 344, 348–49 (S.D.N.Y.1993) (holding that state law quantum meruit and equitable claims brought by health care provider with assignment of rights from enrollees are preempted by FEHBA). The Court finds, however, that notwithstanding Plaintiff's unique position as a provider with no assignment of rights, the nature of its claims as to the 7 SBP enrollees necessarily implicates the terms and provisions of the SBP, and are thus governed by FEHBA.

The 1995 contract between Plaintiff and Defendant does not expressly refer to FEHBA or the SBP. It does, however, provide that Plaintiff will provide "covered services to eligible members" of Defendant's health plans, "in accordance with the type of coverage program held by the member." St. Mary's Hospital—Carefirst Contract, at ¶ 1. The contract also states that Defendant "will reimburse the Hospital according to the terms of its members' subscription agreement ...". *Id.* at ¶ 2. Another provision specifies that Plaintiff "will allow [Defendant's] qualified representatives to review the appropriate medical records for the purpose of assuring that the services rendered were medically necessary." *Id.* at ¶ 9.

In the instant lawsuit, Plaintiff has claimed that "the dispute does not turn on whether benefits were available under a Service Benefit Plan, but whether the duration for which such benefits were provided was medically necessary." Pl.'s Opp. at 6. In light of the 1995 contract provisions, however, the question of what is "medically necessary" appears to be governed by the terms of enrollees' individual benefits plans, just as those plans would govern whether benefits were available at all. Because the contract only requires Defendant to pay for covered services under its enrollees plans, it follows that Defendant would not be required to pay for services deemed to be "medically unnecessary" ac-

cording to the terms of those plans. That the contract gives Defendant the right to review records for medical necessity only strengthens this conclusion. Where the SBP is concerned, it is undisputed that the Statements of Benefits for 1999 and 2000 define what is medically necèssary.

The inescapable conclusion from all this is that any determination of Defendant's alleged wrongful denial of payment will depend on an assessment of whether Defendant correctly deemed as "medically unnecessary" the unpaid services rendered to the 7 SBP enrollees. This assessment necessarily involves analyzing Defendant's application of the SBP's definition of "medically necessary" to the enrollees' treatment. Such a determination of the nature or extent of coverage or benefits under a FEHBA plan is precisely the type of claim that courts have held to be completely preempted by federal law. *See, e.g., Zukor,* No. CA–99–01909–A, Mem. Op. at 7 ("any claim that will draw an HMO into a defensive posture over the way it administers its FEHBA-based plan should be dealt with through FEHBA's civil enforcement provision, 5 C.F.R. § 890.105, or dismissed."). To allow state contract law to decide the matter would disrupt the national uniformity of coverage for federal employees intended by Congress in enacting FEHBA.

■ In reaching this conclusion, the Court acknowledges that Plaintiff is likely left without a remedy for its claims involving the SBP enrollees, because the hospital did not obtain an assignment of rights to pursue OPM review on the enrollees' behalf. This fact does not compel the Court to allow Plaintiff to proceed with its state law claims, however. To do so would cre-ate a perverse incentive for health care providers to forego assignments of rights in order to skirt OPM review and seek possibly more lucrative state remedies.

### III.  SUMMARY JUDGMENT

Having found that Plaintiff's state law claims involving the 7 SBP enrollees are completely preempted by FEHBA, the Court concludes that it has jurisdiction to reach the merits of Defendant's request for summary judgment. Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ There is no dispute that Plaintiff did not avail itself of FEHBA's scheme of administrative review before initiating this litigation. Rather, Plaintiff has sought state law review of claims that cannot be resolved without assessing Defendant's administration of the terms and conditions of SBP benefits and payments with respect to benefits. Therefore, the Court's finding of complete preemption by FEHBA in this case also means that Plaintiff's state law claims as to the SBP enrollees must be dismissed. *See, Lancaster v. Kaiser Found. Health Plan of the Mid–Atlantic States,* 958 F.Supp. 1137, 1150 (E.D.Va. 1997) (finding complete preemption and, as a result, dismissing state law claims).

Remaining in this action are Plaintiff's claims as to the 17 other Carefirst subscribers. As those claims present only issues of state law, and the parties agree there is no diversity jurisdiction, the Court will remand them to the Circuit Court for St. Mary's County.[3]

---

**3.**  In its Notice of Removal, Defendant indicated that it was researching possible grounds for federal jurisdiction over these 17 claims as well. The Court, however, has heard nothing further on the matter from Defendant since the Notice of Removal was filed on April 27, 2001.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss all counts of the Complaint as they pertain to the 7 Carefirst subscribers who were enrolled in the Service Benefit Plan. The Court will remand the remaining claims that pertain to the other 17 Carefirst subscribers. A separate order consistent with this memorandum will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of February, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendant's Motion for Partial Summary Judgment (Paper No. 11) is hereby GRANTED;

2. That all of Plaintiff's claims as they pertain to the 7 enrollees in the Service Benefit Plan (*i.e.*, Rebecca Dean, Clarence Goddard, Mari Kyte, Elizabeth Taylor, Heartic Taylor, Wayne Thomas, and Blanche Holt) are hereby DISMISSED;

3. That all remaining claims are hereby REMANDED to the Circuit Court for St. Mary's County, Maryland;

4. That this case is hereby CLOSED;

5. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

6. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.